**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

District of New Jersey
(State)

Case number (*If known*): ____________ Chapter 11

☐ Check if this is an amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy

04/25

**If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.**

1. **Debtor's name** LIV Golf Ltd

2. **All other names debtor used in the last 8 years** Performance 54i (UK) Limited

   Include any assumed names, trade names, and *doing business as* names

3. **Debtor's federal Employer Identification Number** (EIN) N/A

4. **Debtor's address**

   **Principal place of business**

   Zedra UK Trusts, Booths Hall, Booths Park 3
   Number Street

   Chelford Road

   Knutsford, Cheshire WA16 8GS
   City State ZIP Code

   United Kingdom
   County

   **Mailing address, if different from principal place of business**

   50 Hudson Yards
   Number Street

   Suite 65B
   P.O. Box

   New York NY 10001
   City State ZIP Code

   **Location of principal assets, if different from principal place of business**

   50 Hudson Yards
   Number Street

   Suite 65B

   New York NY 10001
   City State ZIP Code

5. **Debtor's website** (URL) https://www.livgolf.com

**6. Type of debtor**

- ■ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))
- ☐ Partnership (excluding LLP)
- ☐ Other. Specify: ____

**7. Describe debtor's business**

A. *Check one:*

- ☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))
- ☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
- ☐ Railroad (as defined in 11 U.S.C. § 101(44))
- ☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))
- ☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))
- ☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))
- ■ None of the above

B. *Check all that apply:*

- ☐ Tax-exempt entity (as described in 26 U.S.C. § 501)
- ☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)
- ☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes .

**7 1 1 3**

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

*Check one:*

- ☐ Chapter 7
- ☐ Chapter 9
- ■ Chapter 11. *Check **all** that apply*:
  - ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,424,000 (amount subject to adjustment on 4/01/28 and every 3 years after that).
  - ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).
  - ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and it chooses to proceed under Subchapter V of Chapter 11.
  - ☐ A plan is being filed with this petition.
  - ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).
  - ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.
  - ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.
- ☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

- ■ No
- ☐ Yes. District ____ When ____ (MM / DD / YYYY) Case number ____
  District ____ When ____ (MM / DD / YYYY) Case number ____

Debtor LIV Golf Ltd
Name

Case number (if known) ______________________

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

- [ ] No
- [x] Yes. Debtor See Annex 1 Relationship Affiliate
District New Jersey When ________ MM / DD / YYYY
Case number, if known ______________________

**11. Why is the case filed in *this district*?**

*Check all that apply:*

- [ ] Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.
- [x] A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

- [x] No
- [ ] Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

- [ ] It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.
What is the hazard? ______________________
- [ ] It needs to be physically secured or protected from the weather.
- [ ] It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).
- [ ] Other ______________________

**Where is the property?** ______________________
Number Street

______________________
City State ZIP Code

**Is the property insured?**

- [ ] No
- [ ] Yes. Insurance agency ______________________
Contact name ______________________
Phone ______________________

## Statistical and administrative information

**13. Debtor's estimation of available funds**

*Check one:*

- [x] Funds will be available for distribution to unsecured creditors.
- [ ] After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors**

- [ ] 1-49
- [ ] 50-99
- [ ] 100-199
- [ ] 200-999
- [x] 1,000-5,000
- [ ] 5,001-10,000
- [ ] 10,001-25,000
- [ ] 25,001-50,000
- [ ] 50,001-100,000
- [ ] More than 100,000

Debtor LIV Golf Ltd Case number (*if known*)
Name

**15. Estimated assets**

| | | |
|---|---|---|
| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☒ $100,000,001-$500 million | ☐ More than $50 billion |

**16. Estimated liabilities**

| | | |
|---|---|---|
| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☒ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

## Request for Relief, Declaration, and Signatures

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 09/08/2026
MM / DD / YYYY

/s/ David Orlofsky
Signature of authorized representative of debtor

David Orlofsky
Printed name

Title Chief Restructuring Officer

**18. Signature of attorney**

/s/ Michael D. Sirota
Signature of attorney for debtor

Date 09/08/2026
MM / DD / YYYY

Michael D. Sirota
Printed name

Cole Schotz P.C.
Firm name

Court Plaza North, 25 Main Street
Number Street

Hackensack NJ 07601
City State ZIP Code

201-489-3000
Contact phone

msirota@coleschotz.com
Email address

014321986 NJ
Bar number State

| **Fill in this information to identify the case**: | |
|---|---|
| United States Bankruptcy Court for the: | |
| **District of New Jersey** | |
| (State) | |
| Case No. (*if known*): __________________ | Chapter 11 |

☐ Check if this is an amended filing

**Annex 1**
**Pending Bankruptcy Cases Filed by the Debtor and Affiliates of the Debtor**

On the date hereof, each of the entities listed below (collectively, the "Debtors") filed a petition in the United States Bankruptcy Court for the District of New Jersey for relief under chapter 11 of title 11 of the United States Code. The Debtors have moved for joint administration of these cases under the case number assigned to the chapter 11 case of LIV Golf New Jersey LLC.

- LIV Golf Investments Ltd
- LIV Golf Holdings Ltd
- LIV Golf Incorporated
- Wedge IP Management Co, Limited
- Wedge IP Management Co, LLC
- LIV Golf Ltd
- LIV Golf Events (ISE) Ltd
- LIV Golf Events Limited
- LIV Golf US Media, LLC
- Wedge Event 1 Co
- Wedge Event 2 Co
- Wedge Event 3 Co
- Wedge Event 4 Co
- Wedge WPB Inc.
- Wedge Event 7 Co
- Fairway TM Blocker 1, LLC
- Fairway TM Blocker 2, LLC
- Fairway TM Blocker 3, LLC
- Fairway TM Blocker 4, LLC
- Fairway TM Blocker 5, LLC
- Fairway TM Blocker 6, LLC
- Fairway TM Blocker 7, LLC
- Fairway TM Blocker 8, LLC
- Fairway TM Blocker 9, LLC
- Fairway TM Blocker 10, LLC
- Fairway TM Blocker 11, LLC
- Fairway TM Blocker 12, LLC
- Fairway TM Blocker 13, LLC
- Fairway TM Intermediate 1, LLC
- Fairway TM Intermediate 2, LLC
- Fairway TM Intermediate 3, LLC
- Fairway TM Intermediate 4, LLC
- Fairway TM Intermediate 5, LLC
- Fairway TM Intermediate 6, LLC
- Fairway TM Intermediate 7, LLC
- Fairway TM Intermediate 8, LLC
- Fairway TM Intermediate 9, LLC
- Fairway TM Intermediate 10, LLC
- Fairway TM Intermediate 11, LLC
- Fairway TM Intermediate 12, LLC
- Fairway TM Intermediate 13, LLC
- Fairway TM Co 1, LLC
- Fairway TM Co 2, LLC
- Fairway TM Co 3, LLC
- Fairway TM Co 4, LLC
- Fairway TM Co 5, LLC
- Fairway TM Co 6, LLC
- Fairway TM Co 7, LLC
- Fairway TM Co 8 GP, LLC
- Fairway TM Co 8, LP
- Fairway TM Co 9, LLC
- Fairway TM Co 10, LLC
- Fairway TM Co 11, LLC
- Fairway TM Co 12 GP, LLC
- Fairway TM Co 12, LP
- Fairway TM Co 13, LLC

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>LIV GOLF LTD,<br><br>Debtors. | Chapter 11<br><br>Case No. 26-[●] ([●]) |

**List of Equity Security Holders**[1]

| Equity Holder | Address of Equity Holder | Percentage of Equity Held |
|---|---|---|
| LIV Golf Incorporated | 50 Hudson Yards<br>Suite 65B<br>New York, NY 10001 | 100% |

[1] This list serves as the disclosure required to be made by the debtor pursuant to Rule 1007 of the Federal Rules of Bankruptcy Procedure. All equity positions listed indicate the record holder of such equity as of the date of commencement of the chapter 11 case.

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>LIV GOLF LTD,<br><br>Debtors. | Chapter 11<br><br>Case No. 26-[●] ([●]) |

**Corporate Ownership Statement**

Pursuant to Rules 1007(a)(1) and 7007.1 of the Federal Rules of Bankruptcy Procedure, the following are corporations, other than a government unit, that directly or indirectly own 10% or more of any class of the debtor's equity interest:

| Shareholder | Approximate Percentage of Shares Held |
|---|---|
| LIV Golf Incorporated | 100% |

**Fill in this information to identify the case:**

Debtor name LIV Golf New Jersey LLC
United States Bankruptcy Court for the: ____________ District of NJ (State)
Case number (If known): ____________

Official Form 204

## Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders 12/15

**A list of consolidated creditors holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims**

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | Jon Rahm, Rahm; LLC<br>[Redacted] | [Redacted] | Player Participation Agreement | | | | $7,472,527.47 |
| 2 | Bryson DeChambeau; BAD Enterprises, Inc.<br>[Redacted] | [Redacted] | Player Participation Agreement | C | | | $5,769,230.77 |
| 3 | Dustin Johnson; Dustin Johnson Enterprises, Inc.<br>[Redacted] | [Redacted] | Player Participation Agreement | C/U/D | | | $5,489,010.99 |
| 4 | Cameron Smith; Golf Dude Enterprises, LLC<br>[Redacted] | [Redacted] | Player Participation Agreement | | | | $4,835,164.84 |
| 5 | Adrian Meronk<br>[Redacted] | [Redacted] | Player Participation Agreement | | | | $4,436,813.19 |
| 6 | Tyrrell Hatton; Tyrell Hatton Golf Limited<br>[Redacted] | [Redacted] | Player Participation Agreement | | | | $3,373,626.37 |
| 7 | Gerry L Watson<br>[Redacted] | [Redacted] | Player Participation Agreement | | | | $3,324,389.10 |
| 8 | IMG Media LTD; IMG Singapore PTE Ltd; IMG Media Korea, LLC<br>Building 6, Chiswick Park<br>London<br>W4 5HR, GB | Keerthy Dileepkumar, +44-0203-1070765, MediaAR@img.com | Trade Vendor | | | | $3,200,000.00 |
| 9 | Abraham Ancer; Abraham Ancer Golf, LLC<br>[Redacted] | [Redacted] | Player Participation Agreement | | | | $2,651,098.90 |
| 10 | Byeong Hun (Ben) An; BENA Golf, Inc.<br>[Redacted] | [Redacted] | Player Participation Agreement | | | | $1,811,010.68 |
| 11 | United Nations High Commissioner for Refugees<br>Diplomatic Quarter<br>Riyadh<br>11693, KSA | Taleb Salhab , 55-884-4102, salhabt@unhcr.org | Grant Agreement | C | | | $1,717,000.00 |
| 12 | Brooks Koepka; Brooks Koepka Golf LLC<br>[Redacted] | [Redacted] | Agreement | | | | $1,681,278.54 |
| 13 | MDLBEAST Company<br>2311, Dahrat Al Awdah East 17<br>Jax District, Al-Diriyah, Riyadh<br>13732, KSA | Abdulrahman Alkalali, +966 55-134-5577,<br>abdulrahman.alkalali@mdlbeast.com | Trade Vendor | | | | $1,645,707.50 |
| 14 | Ming Entertainment Group<br>2082 Business Center Drive<br>Irvine, CA<br>92612, US | Mark Kwok, +1 949-679-2089, accounting@mingentertainment.com | Workforce Solutions | | | | $1,593,474.84 |
| 15 | Havoc Live LLC<br>1928 Locust Street<br>Saint Louis, MO<br>63103, US | Scott Jones, 404-242-9989, sjones@160over90.com | Trade Vendor | | | | $1,462,512.88 |
| 16 | Rick Shiels Media Limited<br>22 Worple Road<br>London<br>SW19 4DD, GB | Ross Livingston, 781-770-7684, accounts@rickshiels.com | Brand Partnership Agreement | | | | $1,398,300.00 |
| 17 | Caleb Surratt<br>[Redacted] | [Redacted] | Player Participation Agreement | | | | $1,331,116.76 |
| 18 | Joaquin Niemann; Joaquin Niemann, LLC<br>[Redacted] | [Redacted] | Player Participation Agreement | | | | $1,307,692.31 |
| 19 | GSE Worldwide<br>276 Fifth Avenue, Suite 711<br>New York, NY<br>10001, US | Michael Creasy, 843-764-9130, mcreasy@gseworldwide.com | Trade Vendor | | | | $1,287,500.00 |
| 20 | State of Louisiana<br>c/o Louisiana Economic Development<br>100 North St<br>Baton Rouge, LA<br>70802, US | Chris Stelly, 225-342-5555, chris.stelly@la.gov | Agreement | | | | $1,220,000.00 |
| 21 | Fresh Tape Media LLC<br>747 Kalamath St<br>Denver, CO<br>80204, US | Charles Lian, 732-485-4565, accounting@freshtapemedia.com | Trade Vendor / Litigation | C/D | | | $1,208,860.15 |
| 22 | Asian Tour Ltd<br>5 Bukit Manis Road<br>Singapore<br>099893, SG | Ng Chwe Huey, +65 6715 9440, ch.ng@asiantour.com | Agreement | C | | | $1,018,542.73 |
| 23 | 89 Blocks Holding LLC (dba EverWonder Studio)<br>460 Park Ave South<br>New York, NY<br>10016, US | Kevin Mcdonald, +1 323 240 9579,<br>kevin.mcdonald@everwonder.studio | Trade Vendor | | | | $1,014,280.26 |

Fill in this information to identify the case:

Debtor name LIV Golf New Jersey LLC

United States Bankruptcy Court for the: District of NJ (State)

Case number (If known):

Official Form 204

## Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders

**12/15**

**A list of consolidated creditors holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims**

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim<br>If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 24 | Lucas Herbert<br>[Redacted] | [Redacted] | Player Participation Agreement | | | | $1,012,204.95 |
| 25 | Fantasy Interactive, Inc.<br>30 Broad Street, Floor 34<br>New York, NY<br>10004, US | Larry Barlow, 212-941-5220, finance@fantasy.co | Trade Vendor / Litigation | C/D | | | $992,870.75 |
| 26 | Outlyr, LLC<br>3 Greenwich Office Park<br>Greenwich, CT<br>06831, US | James Clark, +1 856-745-3779, accounting@outlyr.com | Trade Vendor | | | | $983,625.00 |
| 27 | Thomas McKibbin<br>[Redacted] | [Redacted] | Player Participation Agreement | | | | $973,109.89 |
| 28 | World Golf Group Limited and Premier Golf League<br>Contact Available Upon Request | GEORGEMALING@ENYOLAW.COM, + 44 (0) 7825 928 201 | Litigation | C/U/D | | | Undetermined |
| 29 | Stonehill Estate Co.<br>Contact Available Upon Request | davinder.singh@davindersinghchambers.com, +65 6328 0299 | Litigation | C/U/D | | | Undetermined |
| 30 | Kobalt Music Publishing America, Inc., BMG Rights Management GmbH 2025 and Concord Music Group, Inc.<br>Contact Available Upon Request | Keith.Hauprich@BMG.com | Litigation | C/U/D | | | Undetermined |

**Fill in this information to identify the case and this filing:**

Debtor LIV Golf Ltd

Court United States Bankruptcy Court for the District of New Jersey

Case number (*If known*): ________________________

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors

12/15

**An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.**

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ☐ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
- ☐ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
- ☐ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
- ☐ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
- ☐ *Schedule H: Codebtors* (Official Form 206H)
- ☐ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
- ☐ Amended *Schedule* ____
- ■ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
- ■ Other document that requires a declaration Corporate Ownership Statement and List of Equity Security Holders

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 09/08/2026
MM / DD / YYYY

✘ /s/ David Orlofsky
Signature of individual signing on behalf of debtor

David Orlofsky
Printed name

Chief Restructuring Officer
Position or relationship to debtor

**LIV GOLF LTD**

(Company No. 13473438)

(the "**Company**")

Minutes of a meeting of the board of directors (the "**Board**") of the Company held by teleconference on 7 September 2026 at 7:42 p.m. Eastern Time (the "**Meeting**"), with each director present in the United States.

**Present:** Eugene Davis (Chairman of the Meeting)

Jon Zinman

## 1. CHAIRMAN OF THE MEETING

Eugene Davis was appointed Chairman of the Meeting (the "**Chairman**").

## 2. NOTICE AND QUORUM

2.1 It was noted that due notice of the Meeting had been given to each director of the Company entitled to receive notice of meetings of the Board in accordance with the articles of association of the Company (the "**Articles**"), or that any requirement for such notice had been waived by the directors of the Company (the "**Directors**").

2.2 It was noted that a quorum was present in accordance with the Articles and that the Meeting was accordingly duly convened and constituted and could proceed to business.

2.3 It was noted that, pursuant to the Articles, attendance at the Meeting by telephone or other electronic means was permitted and that those attending by such means would be counted as part of the quorum and otherwise be entitled to participate fully in the Meeting.

## 3. BACKGROUND AND PURPOSE OF THE MEETING

3.1 The Chairman reported that:

A. the Board had reviewed: (i) presentations and other materials prepared and presented by the management team of the Company ("**Management**") and their financial and legal advisors (collectively, the "**Advisors**") regarding the liabilities, obligations, and liquidity of the Company, the strategic and financial alternatives available to the Company, and the effect of the foregoing on the Company's business operations; and (ii) the information and advice previously provided to and reviewed by the Board; and

B. the Board had had adequate opportunity to consult with Management and the Advisors regarding such presentations and materials, to obtain additional information, and to fully consider each of the strategic alternatives available to the Company and the recommendations of Management and the Advisors.

3.2 It was further noted that:

A. although the Company is incorporated in England and Wales, the administration of its interests is conducted on a regular basis from the United States, and the Directors considered that the Company's centre of main interests is in the United States. In

reaching that view the Directors had regard to the following matters, each of which is apparent to those dealing with the Company:

(i) the Company's registered office is an address provided by a corporate services provider, which is not a place from which the Company's business is directed;

(ii) the Directors are located in the United States and attended this Meeting in the United States;

(iii) the Company's headquarters and senior management are located in the United States and strategic and operational decisions concerning the Company are taken in the United States;

(iv) the Company's receipts and payments are directed and controlled from the United States;

(v) the Company's contracts with counterparties and its dealings with its creditors (including the Public Investment Fund of the Kingdom of Saudi Arabia ("**PIF**") as the only secured creditor) are negotiated and administered from the United States; and

(vi) the Company presents itself publicly as operating from the United States;

B. the Directors had considered each of the matters referred to in paragraph 3.2A above, and were satisfied that each is apparent to those dealing with the Company. On that basis the Directors considered that they were properly able to form the view, and did form the view, that the Company's creditors would regard the Company as being directed, administered and governed from the United States;

C. the Company forms part of a single integrated business and a collective process addressing the business as a whole in a single forum is likely to produce a better outcome for the Company's creditors than separate processes in multiple jurisdictions; and

D. accordingly, the Directors considered that the Chapter 11 Filing, together with the Recognition Application (each as defined below), is the course which best serves the interests of the Company's creditors as a whole.

3.3 The Chairman reported that it was proposed that:

A. the Company enters into a restructuring support agreement (as may be amended, modified, or supplemented from time to time, the "**RSA**");

B. the Company files a voluntary petition for relief (the "**Bankruptcy Petition**") under the provisions of chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (as amended, the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of New Jersey (the "**Bankruptcy Court**") (the "**Chapter 11 Filing**", and the case so commenced in respect of the Company, the "**Chapter 11 Case**");

C. the Company enters into that certain Debtor-in-Possession Facility Agreement (the "**DIP Credit Agreement**" and together with all other agreements, documents, and instruments delivered or executed in connection therewith, the "**DIP Loan Documents**"), dated as of the date hereof, by and among LIV Golf Investments Ltd

("**Parent**"), LIV Golf Holdings Ltd ("**Holdings**"), the other Guarantors (as defined in the DIP Credit Agreement) party thereto (together with Parent and Holdings, the "**DIP Loan Parties**"), as guarantors and PIF ("**DIP Lender**"), whereby (A) the DIP Loan Parties have requested and the DIP Lender has agreed to make available to the Borrower a senior secured priming term loan credit facility in an aggregate principal amount not to exceed approximately $49,600,000 (the "**DIP Term Loan Facility**" and together with the transactions contemplated by the RSA and the Chapter 11 Filing, the "**Restructuring Matters**") and (B) the DIP Lender has requested and the DIP Loan Parties have agreed to provide allowed superpriority administrative expense claims pursuant to section 364(c)(1) of the Bankruptcy Code and first priority priming liens on and security interests in substantially all assets and property of the DIP Loan Parties (now owned or hereafter acquired) pursuant to sections 364(c)(2), (c)(3), and (d)(1) of the Bankruptcy Code;

D. the Company appoints and retains pursuant to section 327(a) or 328 of the Bankruptcy Code (i) Gibson, Dunn & Crutcher LLP as co-bankruptcy counsel; (ii) Cole Schotz P.C. as co-bankruptcy counsel; (iii) AP Services, LLC, an affiliate of AlixPartners, LLP, to provide interim management services; (iv) Ducera Partners LLC as investment banker; (v) Omni Agent Solutions, Inc. as administrative advisor[1]; (vi) Kobre & Kim LLP as special counsel; (vii) KPMG LLP as tax services provider, in each case, upon the terms and conditions set forth in the engagement letters, in relation to the Restructuring Matters, and any Director is further authorised to employ any other professionals to assist the Company in carrying out its duties under the Bankruptcy Code or in relation to the Restructuring Matters, and any Director be authorised to execute appropriate retention agreements and engagement letters, to pay appropriate retainers and fees, and to cause to be filed appropriate applications for authority to retain the services of any other professionals as necessary;

E. the Company further appoints and retains (i) Georgina Peters and Daniel Judd of South Square Chambers; (ii) Carey Olsen Jersey LLP; (iii) Andy Wood; (iv) Alastair Beveridge, in each case, upon the terms and conditions set forth in the engagement letters, as professional advisers in relation to the Restructuring Matters, and any Director is further authorised to employ any other professionals to assist the Company in carrying out its duties under the Bankruptcy Code or in relation to the Restructuring Matters, and any Director be authorised to execute appropriate retention agreements and engagement letters, to pay appropriate retainers and fees, and to cause to be filed appropriate applications for authority to retain the services of any other professionals as necessary;

F. the Company appoints David Orlofsky as chief restructuring officer of the Company, in which capacity he shall (i) execute and file the Bankruptcy Petition for the Company; (ii) be authorised to act as a representative of the Chapter 11 Case (in that capacity, the "**Foreign Representative**") and, in that capacity, to apply to the High Court of Justice of England and Wales under the Cross-Border Insolvency Regulations 2006 for recognition of the Chapter 11 Case as a foreign proceeding in relation to the Company and to seek such further relief as may be appropriate in connection with that application (the "**Recognition Application**", and the documentation relating to that application,

---

[1] The Company also appoints Omni Agent Solutions, Inc. as claims and noticing agent pursuant to 28 U.S.C. § 156(c).

the "**Recognition Application Documents**"); (iii) be authorised to seek approval from the Bankruptcy Court to act as Foreign Representative; and (iv) execute that certain cross-border insolvency protocol dated on or about 8 September 2026 (the "**Cross Border Protocol**"),

(together with all ancillary and related matters, the "**Matters**").

3.4 Accordingly, the Chairman reported that the purpose of the Meeting was to approve the Matters and entry into certain other documents and various other matters relating to or required in connection with the Matters.

**4. DIRECTORS' INTERESTS IN MATTERS**

4.1 In accordance with section 177 and section 182 of the Companies Act 2006 (the "**Act**") and the Articles, the Directors declared their respective personal interests in the business to be transacted at the Meeting.

4.2 It was noted that none of such interests disqualified any of the Directors present from forming part of the quorum of the Meeting or from voting on the business to be transacted at the Meeting.

**5. DOCUMENTS**

5.1 It was noted that the following documents were produced to the Meeting:

A. the RSA;

B. the Bankruptcy Petition;

C. the DIP Loan Documents;

D. the Cross Border Protocol; and

E. the Recognition Application Documents,

(together, the "**Documents**").

**6. CONSIDERATION OF THE MATTERS**

6.1 With reference to the provisions of sections 171 to 177 of the Act (inclusive) and subject to paragraph 6.2 below, it was noted that the directors must act in a way they consider, in good faith, would be most likely to promote the success of the Company for the benefit of its stakeholders, and in doing so have regard (amongst other matters) to certain factors set out in section 172 of the Act. It was noted that each Director acknowledged, understood and would comply with his or her statutory duties as a director set out in such sections of the Act.

6.2 The Directors acknowledged that:

A. if a company is bordering on insolvency, or there is a doubt as to its solvency, and considering the tests set forth in section 123 of the Insolvency Act 1986 (the "**Insolvency Act**") the directors must consider the interests of the company's creditors in order to minimise the potential loss to them;

B. each member of the Board should consider whether it would be in the interest of the Company and each of its stakeholders to continue trading, taking into account the factors leading up to the Chapter 11 Filing; and

C. their duties are owed to the Company individually, and not on a group or divisional basis.

6.3 The Directors further acknowledged that:

A. the Chapter 11 Filing will bring certain protections against creditors bringing certain actions and claims against the Company and the other members of the group who are also expected to file a bankruptcy petition substantially concurrently with the Company;

B. the DIP Term Loan Facility, for which the Chapter 11 Filing is a pre-condition, should enable the Company and the other members of the group to fund the costs of the chapter 11 cases; and

C. those certain protections referred to in paragraph 6.3A above, including the automatic stay arising under the Bankruptcy Code on the Chapter 11 Filing, take effect as a matter of law in the United States and that the Recognition Application is accordingly necessary in order for the Company to obtain protection under English law against creditor action.

6.4 Accordingly, the Board considered that the Chapter 11 Filing, together with the Recognition Application, will help the Company to navigate its deteriorating financial position in the optimal way to achieve a better realisation for creditors and to minimise losses to creditors through a collective proceeding that is also in the best interests of the Company's stakeholders (including, for the avoidance of doubt, its creditors as a whole). In light of the foregoing, the Board, in an exercise of their fiduciary duties, concluded that the Chapter 11 Filing is the course which best serves the interests of the Company and its creditors.

**7. CONSIDERATION AND APPROVAL**

7.1 The Directors confirmed that they had carefully considered the terms of the Matters and the Documents in detail and considered the commercial benefits that would be attained by the Company entering into the Documents and effecting the Matters.

7.2 Having given full and careful consideration and having regard to all such factors as they considered relevant (including the matters referred to in section 172 of the Act), the Directors confirmed that the Company's entry into the Documents and the Matters would be in the best interests of the Company's business and would promote the success of the Company for the benefit of its stakeholders and therefore **IT WAS RESOLVED** that:

A. the Matters are approved;

B. the terms of the Documents are approved;

C. the execution (or, as appropriate, accession to), delivery and performance by or on behalf of the Company of the Documents and any related documents are approved;

D. the Foreign Representative is authorised to prepare the Recognition Application Documents and to make the Recognition Application on behalf of the Company, to swear and file such affidavits and other evidence as may be required in support of it, and to do all such things as he considers necessary or appropriate in connection with the Recognition Application and any relief sought in relation thereto;

E. the terms of the Cross Border Protocol are approved, and David Orlofsky is authorised, in his capacity as chief restructuring officer of the Company, to execute the Cross Border Protocol and bind the Company with effect from the Chapter 11 Filing;

F. any notices, letters, certificates or other communications, agreements or documents required under or in connection with the Documents (each an "**Ancillary Document**") subject to such amendments, variations or modifications to the Documents or Ancillary Document, whether in manuscript or otherwise, as any one Director, acting singly, may in his absolute discretion and without further reference to the Board, think fit, the execution and delivery by any one Director (or, in the case of any document to be executed as a deed, any one Director and such other persons as may be required by law) of the Documents and any Ancillary Document, in each case as so amended, varied or modified and the performance by the Company of its obligations under the transactions contemplated by the Documents and any Ancillary Document are approved; and

G. any Director of the Company is authorised to do all such acts and things and agree and execute on behalf of the Company all such other documents as may be required in order to implement the Matters and/or the terms of the Documents or any related document and generally to sign all such documents, certificates and notices, and give such representations, undertakings and assurances as may be required in connection with the Matters and/or the Documents or any related document.

7.3 **IT WAS FURTHER RESOLVED** that, having considered the Matters, it is desirable and maximises the value of the Company for the benefit of all stakeholders, for the Company to file or cause to be filed the Bankruptcy Petition under the Bankruptcy Code in the Bankruptcy Court, and any other petition for relief or recognition or other order that may be desirable under applicable law in the United States.

**8. GENERAL AUTHORITY**

Having considered the matters referred to in the Meeting, **IT WAS FURTHER RESOLVED** that any Director be and is hereby authorised to do all such acts and things and to amend, agree and execute all such documents as may be required in connection with or contemplated by any of the matters approved at the Meeting.

**9. FILING OF DOCUMENTS**

In connection with the business of the Meeting, **IT WAS RESOLVED** that any Director is authorised and permitted to arrange:

A. the completion of all necessary and appropriate entries in the books and registers of the Company following completion of the transactions contemplated by the Meeting; and

B. for all appropriate forms and documents to be filed with the Registrar of Companies (in hard copy or by online filing).

**10. CLOSE OF MEETING**

There being no further business, the Meeting then closed.

Signed by:
Eugene Davis
BCF5855466F8413...
..............................................................

**Chairman**